RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0360p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

AMANDA MORRISON, et al.,
                              *Plaintiffs-Appellees,*

          *v.*

No. 08-3051

BOARD OF TRUSTEES OF GREEN TOWNSHIP, et
al.,
                              *Defendants,*

SCOTT CELENDER,
                              *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00755—Susan J. Dlott, Chief District Judge.

Argued: June 19, 2009

Decided and Filed: October 8, 2009

Before: KEITH, CLAY, and GIBBONS, Circuit Judges.

—————————————

## COUNSEL

—————————————

**ARGUED:** Andrew E. Rudloff, SUBASHI, WILDERMUTH & DINKLER, Dayton, Ohio, for Appellant. Norman J. Frankowski II, FLAGEL & PAPAKIRK, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Nicholas E. Subashi, SUBASHI, WILDERMUTH & DINKLER, Dayton, Ohio, for Appellant. Norman J. Frankowski II, James Papakirk, FLAGEL & PAPAKIRK, Cincinnati, Ohio, for Appellees.

—————————————

## OPINION

—————————————

KEITH, Circuit Judge. Defendant-Appellant Officer Scott Celender ("Officer Celender") appeals the district court's partial denial of his motion for summary judgment in this 42 U.S.C. § 1983 action, in which Plaintiff-Appellee Amanda Morrison ("Amanda") claims Officer Celender violated her constitutional right to be free from the use of excessive

force when he: (1) refused to loosen her handcuffs during lawful detainment after receiving complaints that they were too tight; and (2) pushed her face into the ground multiple times after she was already handcuffed and subdued. Officer Celender raises a qualified immunity defense. For the following reasons, we **AFFIRM** the district court's partial denial of Officer Celender's Motion for Summary Judgment.

**I.**

**A. Facts**

This case stems from a domestic disturbance occurring at the Morrison household during daylight hours on October 30, 2002, when Tika Morrison ("Tika"), Amanda's sister, called 911 and reported that nineteen-year-old Amanda had a knife and was threatening suicide.[1] Mike Hopewell ("Deputy Hopewell"), a Hamilton County Deputy Sheriff, responded to the subsequent 911 dispatch and arrived on the scene to find Amanda sitting outside by herself in front of a neighbor's home. Amanda informed Deputy Hopewell that she had left her house following an argument with Cynthia Morrison ("Cynthia"), her mother, in which Amanda stated, "I could just kill myself."

Officer Celender of the Green Township Police Department arrived shortly thereafter and was asked by Deputy Hopewell to question the family members about the incident. After speaking with Cynthia, Officer Celender returned from the house to where Amanda and Deputy Hopewell were located. Deputy Hopewell testified that at that point he told Amanda they would have to take her to the hospital for a psychiatric evaluation.[2] While Deputy Hopewell was opening the police cruiser door, Officer Celender claimed he saw Amanda get up and run in the direction of her house, fleeing from the officers. In contrast, Amanda maintained she announced to the officers that she was going back inside, and simply walked away, thinking the police had finished with

---

[1] The factual background provided in the main text relates mostly to the particular issues in dispute on appeal. For a detailed recitation of the facts, see *Morrison v. Bd. of Trustees of Green Twp.*, 529 F. Supp. 2d 807, 815-18 (S.D. Ohio 2007).

[2] Ohio Rev. Code § 5122.10, a mental health statute, authorizes seizure of persons who represent a substantial risk of physical harm to themselves or others under certain conditions pending medical evaluation. The basis of Amanda's detention is not at issue on appeal.

her. What followed next is undisputed – Officer Celender tackled Amanda from behind and handcuffed her hands behind her back.

Cynthia emerged from the house and saw Officer Celender kneeling on top of Amanda in a neighbor's yard. Cynthia testified that she ran over to where Amanda was lying face down and noticed that the handcuffs were pinching Amanda's skin, causing her skin to turn black and blue. Amanda claimed that the handcuffs also left "marks" on her wrists due to their tightness. Cynthia and Amanda both assert that they asked Officer Celender to loosen the handcuffs but that he refused their requests. Officer Celender denied this allegation and maintained he responded to the complaints by sticking his finger in between the handcuffs and Amanda's skin to make sure they were not "too tight."

Amanda alleged that while she was lying on her stomach and handcuffed, Officer Celender pushed her face into the ground every time she tried to talk. According to Amanda, this happened four to five times. Amanda described the injury resulting from the pushing as a "minor scratch, not even deep enough to cause [the skin] to bleed" and likened it to when "you scratch yourself with your fingernail [and] it just kind of turns red." Officer Celender acknowledged that Amanda was entirely compliant with his directions while she was handcuffed and that at no point did she attempt to struggle or flee. Amanda admitted to screaming while restrained, but alleged that she did so out of pain because of an injury to her ankle that she suffered when Officer Celender tackled her.

Sometime after Officer Celender handcuffed Amanda, Lieutenant David Luke, a Hamilton County Deputy Sheriff, and Sergeant Dan Eagle, a Green Township police officer, arrived on the scene. They were followed by Dennis Morrison ("Dennis"), Amanda's father. Dennis came home after receiving word that there was an emergency at the house and that "something about suicide was mentioned." Amanda testified that Officer Celender immediately reacted to the appearance of Dennis by exclaiming, "Shit, it's the father. Get him." After getting out of his car, Dennis identified himself to the officers as Amanda's father, and attempted to approach Amanda, who was screaming

that her ankle was broken. According to Dennis, Deputy Hopewell and Officer Celender blocked his path and Officer Celender pushed him and told him to shut up and calm down. It was alleged that Officer Celender again pushed Dennis after he continued to inquire into what had happened, at which point Dennis warned Officer Celender to "keep his hands off [him.]"

Dennis testified that while Amanda was being treated for her ankle injury by paramedics, who were called by the police, one of the officers told her to "shut up" when she tried to explain her injuries. Dennis protested in response and, as a result, Deputy Hopewell was ordered by Lieutenant Luke to "get [Dennis] out of there." While Dennis maintained he was calm during the confrontation, the officers testified below that he repeatedly charged them in a hostile manner and, thus, was taken down to the ground by the police and placed under arrest. Both Cynthia and Tika, who were standing outside at the time, denied that Dennis acted aggressively during the encounter.

The paramedics treated Amanda at the scene for a sprained ankle and then transported her to the hospital. Amanda was released from the hospital later that day.

**B. Procedural History**

Amanda, Dennis, and Cynthia brought the underlying lawsuit in the Southern District of Ohio against the Board of Trustees of Green Township; Board of County Commissioners of Hamilton County, Ohio; Green Township Police Department; Hamilton County Sheriff's Department; Officer Celender; Deputy Hopewell; and unknown police officers and political subdivisions or agencies. Amanda and Dennis raised claims of excessive force, seizure without probable cause, failure to train, and failure to discipline pursuant to 42 U.S.C. § 1983. They also asserted various state law claims. Cynthia separately alleged loss of consortium.

On February 25, 2005, all of the defendants moved for summary judgment. On November 29, 2007, the district court granted the motion in favor of the defendants on all claims with the exception of denial of summary judgment regarding Amanda's claim of excessive use of force against Officer Celender. *See Morrison*, 529 F. Supp. 2d at

835-36.  The district court denied the motion because it found that he was not entitled to qualified immunity with respect to Amanda's allegations that he failed to loosen Amanda's handcuffs and that he repeatedly pushed Amanda's head into the ground after she had been handcuffed and subdued.  *Id.* at 832-33.  Officer Celender filed the instant interlocutory appeal.[3]

## II.

We review the "denial of summary judgment on grounds of qualified immunity *de novo* because application of this doctrine is a question of law." *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996).

"The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009).  The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In evaluating a party's summary judgment motion, a court "must view the facts and any inferences reasonably drawn from them in the light most favorable to the party against whom judgment was entered." *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).

Because this appeal from the denial of qualified immunity is interlocutory, this Court may only exercise jurisdiction over the appeal "to the extent that a summary judgment order denies qualified immunity based on a pure issue of law." *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006).  Accordingly, "a defendant entitled to invoke a qualified immunity defense may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of material fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20

---

[3]A separate panel of this Court dismissed the Morrisons' interlocutory cross-appeal of the district court's denial of their remaining claims. *Morrison v. Bd. of Trustees of Green Twp.,* No. 08-3052 (6th Cir. June 16, 2008).

(1995). "If . . . the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998). The only issue a defendant denied qualified immunity may appeal is the question of "whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Id.*

### III.

Officer Celender argues the district court erred in partially denying his motion for summary judgment because the doctrine of qualified immunity bars Amanda's excessive force claim against him. Specifically, he claims that the evidence offered below cannot establish that he violated Amanda's right to be free from unduly tight handcuffs. Furthermore, he contends Amanda's allegations that he pushed her face to the ground to silence her screaming while she was handcuffed and subdued similarly cannot support an excessive force claim. To the extent he violated a protected right with respect to the pushing, Officer Celender argues that the particular right at issue was not "clearly established."

Qualified immunity shields government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity does not serve merely as a defense against liability to be asserted during litigation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Rather, it offers "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See Jones v. City of*

*Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (citing *Saucier*, 533 U.S. at 201).**4** A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

As noted above, Amanda brings this action pursuant to 42 U.S.C. § 1983, alleging Officer Celender violated her constitutional right to be free of excessive force. We apply the Fourth Amendment's unreasonable seizure jurisprudence when analyzing such claims. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). Whether an officer has exerted excessive force during the course of seizure is determined under an "objective reasonableness" standard. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). This entails "balanc[ing] the consequences to the individual against the government's interests in effecting the seizure." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). The assessment involves a fact-specific inquiry based on the totality of the circumstances that "pay[s] particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Kostrzewa*, 247 F.3d at 639 (quoting *Graham*, 490 U.S. at 396). The Court should judge the lawfulness of the conduct from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396).

A reviewing court analyzes the subject event in segments when assessing the reasonableness of a police officer's actions. *See Phelps v. Coy*, 286 F.3d 295, 301 (2002). Thus, we must make separate qualified immunity determinations for each of the two grounds offered by Amanda for excessive use of force: (A) Officer Celender's

---

**4**The Supreme Court recently considered whether to abandon the *Saucier* two-prong test in *Pearson v. Callahan,* 129 S.Ct. 808 (2009). The Court preserved the test but decided it was no longer mandatory to follow the prongs in order.

refusal to loosen her handcuffs; and (B) Officer Celender's pushing of her face into the ground while she was handcuffed.[5]

## A. Handcuffing

Officer Celender challenges the district court's ruling that a reasonable juror could find that his refusal to loosen Amanda's handcuffs constituted excessive use of force. The district court specifically denied him qualified immunity on summary judgment "[b]ecause Plaintiffs alleged that Amanda sustained some physical injury from the handcuffing (pinched skin) and that Officer Celender ignored her complaint that the handcuffs were too tight." *Morrison*, 529 F. Supp.2d at 832. As a result, the court found that Amanda was entitled to present her claim of excessive force on a theory of unduly tight handcuffing to a jury. *See id.*

The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. *See Kostrzewa*, 247 F.3d at 639. This right was "clearly established" for qualified immunity purposes at the time of Amanda's seizure on October 30, 2002. *See id.* at 641. In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *See Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005).

Amanda can easily satisfy the first two elements of the test. First, Officer Celender conceded that she complained of the tightness of the handcuffs. (Celender Dep. at 277). Second, although Officer Celender claimed he responded to the complaint

---

[5]Amanda also argued below that Officer Celender used excessive force when he tackled her in effecting the initial seizure. The district court found that although the tackle violated Amanda's right to be free from excessive force, at least for purposes of summary judgment, Officer Celender was nonetheless shielded from liability because the "Plaintiffs have not shown that the law on October 30, 2002, the time of the incident, clearly established that Officer Celender's conduct would violate the Constitution." *Morrison*, 529 F. Supp.2d at 831. Because a separate panel of this Court previously declined to grant pendent jurisdiction over the claims dismissed on summary judgment by the district court, including the tackling claim, the tackling issue is not before the Court on the instant appeal. *Morrison v. Bd. of Trustees of Green Twp.*, No. 08-3052 (6th Cir. June 16, 2008).

by sticking his finger in between the handcuffs and Amanda's skin to make sure they were not "too tight," (*id.*), both Amanda and Cynthia testified that he disregarded the complaint and refused to loosen the handcuffs.  Specifically, Amanda alleged that Officer Celender's response to her request was that he could place the handcuffs on "as tight as he wanted to and that's how they were staying."  (A. Morrison Dep. at 118). Cynthia similarly asserted that Officer Celender refused to loosen the handcuffs.  (C. Morrison Dep. at 52).  Given that we "must view the facts and any inferences reasonably drawn from them in the light most favorable to the party against whom judgment was entered," *Kalamazoo Acquisitions*, 395 F.3d at 342, Amanda can satisfy the second element of the test.  In other words, a reasonable juror could conclude based on the evidence that Officer Celender ignored the complaints that the handcuffs were on too tight.

The remaining, and most contentious, issue on appeal with respect to the handcuffing claim is whether Amanda alleged an adequate physical injury to preclude summary judgment.  In finding Amanda met this requirement, the district court relied on Cynthia's testimony that the handcuffs were so tight that "[Amanda's] skin was all pinched over and it was turning black and blue," (C. Morrison Dep. at 52).  *See Morrison*, 529 F. Supp.2d at 832.  Although not specifically mentioned by the district court, there was also evidence that there were "marks" on Amanda's wrists as a result of the handcuffing.  Specifically, Amanda explained to an inquiring paramedic that the marks on her wrists were from the handcuffs.  (A. Morrison Dep. at 189).  Officer Celender argues that allegations of bruising and wrist marks alone are, as a matter of law, insufficient to establish a "physical injury." We disagree.

Our decision in *Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997), demonstrates that the injury required to sustain a successful handcuffing claim is not as demanding as Officer Celender would suggest.  In *Martin*, the plaintiff complained of excessive force by being handcuffed so tightly that his hands had become numb and swollen during a twenty-minute ride to the jail and a fifteen-minute wait in a holding cell.  *Id.* at 1310. We reversed the district court's award of qualified immunity on

directed verdict, ruling that a "genuine issue of material fact exist[ed] as to whether [the defendant police officer] used excessive force under the circumstances." *Id.* at 1313. We reached this conclusion notwithstanding the absence of evidence that Martin continued to suffer numbness and swelling after the handcuffs were removed, or otherwise incurred injury.[6] *See id.* at 1312-13.

Given the injuries alleged in *Martin*, we are unwilling to rule as a matter of law that Officer Celender's handcuffing did not amount to an excessive use of force. *See also Baskin v. Smith*, 50 F. App'x 731, 737-38 (6th Cir. 2002) (denying qualified immunity on summary judgment for excessive force when plaintiff alleged handcuffing for forty-five minutes to an hour caused pain and pinched his wrists until they bled). In other words, the bruising, skin marks, and attendant pain allegedly suffered by Amanda during the forty to fifty minutes she was handcuffed creates a genuine issue of material fact regarding the existence of an injury.

This would not be the first time we have indicated that bruising could support an excessive use of force claim based on handcuffing. *See Burchett*, 310 F.3d 937. *Burchett* specifically considered summary judgment of the plaintiff's allegations that his hands were "swollen and blue" while he was handcuffed. *Id.* at 941. Although ultimately granting qualified immunity to the defendant officer because he immediately removed the handcuffs once the plaintiff complained of tightness, the Court emphasized that

> applying handcuffs so tightly that the detainee's hands become numb and turn blue certainly raises concerns of excessive force. Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight.

*Id.* at 944-45 (citing *Kostrsewa*, 247 F.3d at 641, and *Martin*, 106 F.3d at 1310, 1313). We agree, and find that the allegations of bruising and wrist marks create a genuine issue

---

[6]Although the plaintiff in *Martin* also "alleged injuries that included a fractured right clavicle; bruises and abrasions to the head, face, neck, shoulder; and permanent injuries to his right arm, elbow, hand, and shoulder," these injuries were not alleged to have resulted from the handcuffing, but rather from an altercation with the arresting officers that preceded the handcuffing. *See* 106 F.3d at 1309-10.

of material fact with regard to the injury prong.  *See also Grooms v. Dockter*, No. 95-1261, 76 F.3d 378, at *1-2 (6th Cir. Jan. 23, 1996) (Table) (per curiam) (affirming denial of summary judgment to defendant police officers because they left a suspect handcuffed too tightly for 30 minutes, resulting in serious damage to his hands and wrists, including swelling and bruising); *Meredith v. Erath*, 342 F.3d 1057, 1060-61 (9th Cir. 2003) (permitting unduly tight handcuffing claim to survive summary judgment based on allegations of bruising alone); *Bolan v. City of Keego Harbor*, No. Civ. 01-74467, 2002 WL 31545997, at *4 (E.D. Mich. Oct. 24, 2002) (finding allegations that handcuffs applied "so tight as to bruise [plaintiff's] wrists" permitted claim for excessive force to survive summary judgment).

Officer Celender argues that our decision in *Lyons*, which similarly considered a request for qualified immunity on summary judgment with respect to an excessive handcuffing claim, compels the Court to rule in his favor.  417 F.3d 565.  In that case, the plaintiff alleged the defendant police officer "initially handcuffed her 'as tight as he could'-so that the handcuffs were 'very, very, very tight'" which resulted in bruising on her wrists.  *Id.* at 575.  The Court observed that no other injuries were alleged and that the plaintiff had not complained that the "tightness of the handcuffs persisted beyond the moment of handcuffing." *Id.*  While remarking that the plaintiff "alleges little in the way of the physical injuries caused by the handcuffing," the Court ultimately concluded the plaintiff had not carried her burden and granted the officer qualified immunity on summary judgment.  *Id.* at 576.  In light of *Lyons*, Officer Celender maintains that Amanda's purported injuries are inadequate to sustain an excessively forceful handcuffing claim as a matter of law.

After close examination of *Lyons*, we are not convinced that it dictates the outcome of this case.  *Lyons*' statement that the plaintiff "alleges little" in terms of injury did not establish a ruling that she failed to satisfy the injury prong.  We construe this passing reference as a mere expression of the Court's skepticism about the adequacy of her injuries, without adopting a definitive stance on the issue.  The only clear holding in *Lyons* pertaining to the handcuffing claim is that Lyons' injuries were not severe

enough to alleviate her burden to strictly satisfy the first two elements of the test – complaint of tight handcuffs and disregard of that complaint by the officer – because her alleged injuries were not "such an obvious physical problem" that a reasonable officer would have been aware of them. *Id.* Accordingly, *Lyons*'s views on bruising vis-à-vis the injury prong are dicta and not binding on subsequent panels. *See Williams v. Anderson*, 460 F.3d 789, 811 (6th Cir. 2006) (holding that dicta is not binding precedent). We further add that even had we found *Lyons* established a holding regarding the injury element, we are obligated to follow *Martin*, 106 F.3d 1308, as it was decided eight years earlier. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) ("The prior decision [of a Sixth Circuit panel] remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") (citation omitted). Therefore, *Lyons* does not prevent Amanda's handcuffing claim from reaching a jury.

At bottom, we rule that Amanda has offered sufficient evidence to create a genuine issue of material fact regarding each element of the handcuffing test, including the injury requirement. Therefore, we affirm the district court's denial of Officer Celender's request for qualified immunity on summary judgment on this ground.

## B. Pushing of Face

Officer Celender next challenges the district court's denial of his motion for summary Judgment on Amanda's excessive force claim based on the alleged pushing of her face into the ground. Amanda specifically alleged Officer Celender pushed her face into the ground whenever she tried to talk – approximately four to five times – while she lay handcuffed and prone in a neighbor's yard. The district court refused to grant Officer Celender qualified immunity, ruling that "Officer Celender's pushing Amanda Morrison's head into the ground when she was handcuffed and not posing any threat to anyone was an unreasonable use of force." *Morrison*, 529 F. Supp.2d at 832. On appeal, Officer Celender claims (1) his conduct did not amount to an excessive use of force and, (2) in the alternative, that even if he violated Amanda's constitutional right to be free of such force, the particular right at issue in this case was not "clearly

established."   Accordingly, he argues the district court erred by not granting him qualified immunity as a matter of law.

*1. Constitutional Violation*

As mentioned earlier, the Court uses an objective reasonableness standard to determine whether excessive use of force occurred. *Kostrzewa*, 247 F.3d at 639.  This entails a fact-specific inquiry which balances the costs to the individual against the government's interest in using force. *See Burchett*, 310 F.3d at 944.  As evident from this formulation, a primary consideration in the inquiry is whether the law enforcement officer had a legitimate government interest, i.e. justification, to exert force.  This Court has consistently held in light of the reasonableness standard that "use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Baker v. City of Hamilton*, 471 F.3d 601, 607-08 (6th Cir. 2006) (ruling an excessive force claim could reach a jury when the plaintiff allegedly suffered a blow to the head with an asp after he raised his hands in the surrender position). The reason for this is that once the detainee ceases to pose a threat to the safety of the officers or others, the legitimate government interest in the application of significant force dissipates. *See Phelps*, 286 F.3d at 301-02 (finding officers "simply [had] no governmental interest in continuing to beat [the plaintiff] after he had been neutralized").  As we have previously explained:

> [A] police officer's use of force against a suspect is justified by the threat posed by the suspect to the safety of the officer or others. By contrast, when a suspect has been already been [sic] *restrained*, the officer's constitutional authority to use force is significantly more circumscribed. This constitutional line serves to ensure that a police officer's authority to use legitimate force to detain does not cross into physical abuse of an incapacitated suspect.

*Bultema v. Benzie County*, 146 F. App'x 28, 37 (6th Cir. 2005) (internal citation omitted).

Officer Celender claims that Amanda's pushing allegations cannot establish a violation of her constitutional right to be free of excessive force as a matter of law because (a) his concern for officer safety justified his actions and (b) the nature and

extent of the injuries alleged by Amanda, as a result of the pushing, are inadequate to sustain an excessive force claim.  We find neither of these arguments persuasive.

*a.  Justification*

First, Officer Celender essentially argues that the government interest in maintaining officer safety outweighed Amanda's interest in avoiding force when he pushed her face into the ground.  Notably, Officer Celender does not allege that he engaged in this conduct because Amanda threatened officer safety, as he concedes that Amanda was totally compliant while she was handcuffed and that at no point did she attempt to struggle or flee while restrained.  (Celender Dep. at 287).  Rather, he claims Amanda's relatives represented the threat due to Amanda's "disorderly and inciteful screaming [, which was] likely to escalate an already tense conflict."  However, taking the facts as Amanda asserts them, Amanda screamed out of pain and anguish over the ankle injury she suffered when Officer Celender tackled her, rather than to incite her family to violence against the officers.**7**  Moreover, although Officer Celender identifies Dennis, Amanda's father, as a particular source of concern because of Amanda's screaming and offers Dennis' arrest as definitive proof of the volatility of the situation, Dennis flatly denied that he was "excited" when he initially approached the officers. (D. Morrison at 43).  Dennis alleged he was escorted away from Amanda merely because he objected when the officers told Amanda that she did not have a right to speak with the paramedics about her injury.  (D. Morrison Dep. at 57-58).  According to Dennis, he "made no aggressive actions" before Deputy Hopewell wrestled him to the ground and handcuffed him.  (Id. at 58).  Amanda's testimony buttresses the notion that the police instigated the altercation with Dennis, which resulted in him being taken into custody, as she alleged that Officer Celender reacted without provocation to Dennis' appearance on the scene, exclaiming, "'Shit, it's the father.  Get him.'"  (A. Morrison Dep. at 139). Cynthia and Tika offer further support, claiming Dennis did not appear "upset" nor was

---

**7**Amanda testified that she screamed to Cynthia "that my ankle [is] broke and that it hurt."  (A. Morrison Dep. at 111).  Deputy Hopewell also indicated that Amanda's screaming, at least partially, was due to her injuries.  (Hopewell Dep. at 168).  Furthermore, Amanda screamed to her father, Dennis, "Daddy, they broke my ankle."  (D. Morrison Dep. at 52).

he acting "angry," "belligerent," "aggressively," or "nasty" when confronting the officers.  (C. Morrison Dep. at 74, 85; T. Morrison Dep. at 64).

While Officer Celender also cites a safety concern created by the presence of Cynthia and Tika, the record is completely unsupportive of this contention.  None of the witnesses in the proceedings below alleged that Cynthia or Tika threatened the officers or behaved in a hostile manner.  To the contrary, the pair maintained they refrained from yelling or screaming at the officers when protesting the officers' treatment of Amanda and complied with police orders to leave the scene after Dennis was taken into custody.  (C. Morrison Dep. at 52, 86-87; T. Morrison Dep. at 66). Officer Celender himself acknowledged that he was not "concerned" about Cynthia or Tika when Dennis was confronting the officers, as "[t]hey weren't pushing their way in.  They weren't trying to hit me or her, anything outrageous.  I think they were standing off to the side and protesting what was going on."  (Celender Dep. at 314).

Viewing the evidence in the light most favorable to the non-moving party, as required of us on summary judgment, a reasonable juror could find that no such threat to officer safety existed.  And in the absence of a threat to officer safety, Officer Celender cannot argue that he acted reasonably under the Fourth Amendment when he pushed Amanda's face into the ground while she was incapacitated because "use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." Baker, 471 F.3d at 607-08; see also Phelps, 286 F.3d at 301-02.[8]  Therefore, we rule that Officer Celender is not entitled to summary judgment on this ground.

*b. Injury*

Officer Celender separately argues that the nature and extent of the injuries alleged by Amanda as a result of the pushing of her face into the ground are fatal to her

---

[8]In light of the "totality of the circumstances" nature of the excessive use of force test, *see Kostrzewa*, 247 F.3d at 639, it is worth mentioning that law enforcement was not called to the Morrison residence to respond to a criminal complaint, but rather to handle a mental health situation, specifically, a supposed suicide threat.  Given that the officers were ostensibly sent to protect Amanda, albeit from herself, we find that Officer Celender's use of force becomes all the more susceptible to a finding of unreasonableness on summary judgment. *See id.* (stating the applicable reasonableness inquiry "pay[s] particular attention to 'the severity of the crime at issue'") (quoting *Graham*, 490 U.S. at 396).

excessive force claim. He contends Amanda "sustained no real injury," relying heavily on the fact that Amanda described her injury as a "minor scratch, not even deep enough to cause [the skin] to bleed," and likened it to when "you scratch yourself with your fingernail [and] it just kind of turns red." (A. Morrison Dep. at 116).

Officer Celender essentially asks this Court to impose a blanket *de minimis* injury requirement for excessive force claims. In support of this proposition, he cites several of our cases in which we denied the defendant police officer qualified immunity when the plaintiff presented evidence of particularly violent displays of physical contact. *See generally Phelps*, 286 F.3d at 297, 301-02 (finding allegation that defendant officer "banged" the suspect's head into the floor three times even though he presented no threat constituted excessive force for purposes of summary judgment); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (finding same for spraying mace in the face of an incapacitated suspect); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (finding same for hitting a handcuffed suspect with a nightstick, and breaking his ribs, when the suspect was not resisting); *Darnell v. Caver*, No. 97-5297, 156 F.3d 1229, at * 3 (6th Cir. June 7,1998) (Table) (finding same for slamming handcuffed person's head into the pavement or picking it up and letting it fall under its own weight). But while an excessive use of force claim *may* be established through evidence of severe injury or physical contact, this Circuit has not required that this *must* be the case. *See Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999). Rather, we have held that a plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Id.* (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996) (upholding excessive force claim where plaintiff alleged that officers used excessive force in removing her wedding ring)). We have gone so far as to state that the "extent of the injury inflicted" is not "crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment." *Baskin*, 50 Fed. Appx. at 737 n.2 (contrasting an excessive use of force claim based on the Fourth Amendment with that brought under the Eighth Amendment for "cruel and unusual punishment").

"Gratuitous violence" inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial. *See, e.g., Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006). In *Pigram*, it was alleged that the defendant police officer slapped the handcuffed plaintiff in the face because the latter was being unruly and had a "smart-ass mouth." *Id.* at 513. Finding the defendant's condut to be unreasonable under the Fourth Amendment for the purposes of summary judgment, *Pigram* emphasized that a "slap to the face of a handcuffed suspect – even a verbally unruly suspect – is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect." *Id.* The Court reached this conclusion notwithstanding the relatively minimal use of force applied and the absence of any resulting injury. *See id.* (stating "under specific circumstances, a slap may constitute a sufficiently obvious constitutional violation" even if "involv[ing] less physical force than a 'tackle'").

As in *Pigram*, Amanda alleges that Officer Celender applied force to her head when she posed no threat to officer safety. She specifically claims Officer Celender repeatedly pushed her face to the ground every time she attempted to speak while she was already handcuffed, lying down, and compliant with the officer's commands. Given that we must assume on summary judgment that a reasonable officer would not have felt a threat to officer safety under the circumstances, see *supra*, Officer Celender's alleged behavior represents the sort of "gratuitous violence" which we have found unconstitutional in *Pigram. Id.*; *see also Phelps*, 286 F.3d at 302; *Adams*, 31 F.3d at 386; *McDowell*, 863 F.2d at 1307. Such "antagonizing" and "humiliating" conduct is unreasonable under the Fourth Amendment, regardless of the existence of injury, *see Pigram*, 199 F. App'x at 513, and crosses the line "into physical abuse of an incapacitated suspect," *see Bultema*, 146 F. App'x at 37. Therefore, we find that the nature and extent of Amanda's injuries do not warrant judgment as a matter of law in favor of Officer Celender.

*2. Violation of Clearly Established Right*

Officer Celender finally argues that he is entitled to qualified immunity, even if he violated Amanda's constitutional rights, because it was not clearly established at the time of the incident that a "reasonable police officer could not push a detainee's head to the ground to silence disorderly and inciteful screaming likely to escalate an already tense conflict." In other words, he claims a reasonable officer in his position would not have known that his conduct violated Amanda's constitutional right to be free from excessive force. *See generally Anderson*, 483 U.S. at 640.

As discussed above, a reasonable juror could find based on the evidence that Officer Celender pushed Amanda's face into the ground absent a legitimate government interest, namely officer safety. "[I]n this Circuit, the law is clearly established that an officer may not use additional gratuitous force once a suspect has been neutralized." *Alkhateeb v. Charter Township of Waterford*, 190 F. App'x 443, 452 (6th Cir. 2006) (citing *Phelps*, 286 F.3d at 301); *see also Pigram*, 199 F. App'x at 513 (citing cases); *Bultema*, 146 F. App'x at 37 (citing *McDowell*, 863 F.2d at 1307, and stating "we have also held for more than twenty years that it is clearly established in this circuit that 'a totally gratuitous blow' to a suspect who is handcuffed and offering no resistance violates the Fourth Amendment"). Officer Celender was on notice that his conduct was a violation of Amanda's constitutional rights to be free from excessive use of force because it was "'obvious' under the general standards of constitutional care" existing as of October 30, 2002 – the date of the relevant events – that such conduct violated her Fourth Amendment rights. *See generally Lyons*, 417 F.3d at 579. Specifically, it was "obvious" that Officer Celender could not push a handcuffed detainee's face into the ground when there lacked a genuine threat to the safety of the officers or others. *See Phelps*, 286 F.3d at 301. Therefore, we reject Officer Celender's argument that the right at issue was not "clearly established."

**IV.**

Accordingly, for the reasons stated above, we AFFIRM the district court's partial denial of Officer Celender's motion for summary judgment.