NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0258n.06

No. 22-1834

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

LONNIE OLMETTI,

     Plaintiff-Appellee,

v.

KENT COUNTY, MICHIGAN,

     Defendant,

TYLER KING and JUSTIN LINSEA, in their individual and official capacities,

     Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jun 07, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

---

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge**. Lonnie Olmetti, a sixty-year-old pretrial detainee in Kent County, Michigan, alleges that he was manhandled and handcuffed excessively tightly while being transported back to jail after a hospital visit. The district court denied defendants Tyler King and Justin Linsea qualified immunity, and we **AFFIRM** the district court's decision.

**I. BACKGROUND**

From November 2017 to March 2018, Lonnie Olmetti was incarcerated at the Kent County Correctional Facility ("KCCF"). R. 69-6 (Olmetti Dep. Tr. at 166:5–6, 190:10–19) (Page ID #608, 610). On March 23, he was released on bond, and on March 25, after drinking to excess and becoming ill in the motel where he was staying, Kentwood police, the fire department, and

paramedics came to check on him.  R. 90-3 (Olmetti Dep. Tr. at 190:13-15) (Page ID #1889); R. 93-4 (KCCF Central Intake Admission Form at 1) (Page ID #2053).  When emergency personnel attempted to wake him, he swung at a firefighter, and was arrested and returned to KCCF.  R. 90-3 (Olmetti Dep. Tr. at 194:7–15) (Page ID #1890).  At the jail, before he could be booked, he collapsed, and when a nurse attempted to wake him, he struck the nurse in the face.  *Id.* at 195:19–196:25 (Page ID #1890); R. 74-5 (Med. Records at 4) (Page ID #943).  Correctional officers restrained him and took him to Butterworth Hospital, where he was restrained and sedated because he was combative with hospital staff.  R. 69-11 (Med. Note at 1) (Page ID #648).  He was sent back to KCCF the following day, and he received a low-bunk pass[1] due to concerns about alcohol withdrawal.  R. 69-13 (Med. Alert at 1) (Page ID #655).  This pass expired after a few days.  R. 74-5 (Med. Records at 17) (Page ID #956).  Though Olmetti previously had a low-bunk pass due to a shoulder injury and uneven gait during his initial incarceration at KCCF, when he was reevaluated in March 2018, a nurse concluded that he no longer required a low-bunk pass.  R. 69-1 (Sherwood Dep. Tr. at 133:7–22; 133:23–135:7) (Page ID #560).

On April 3, 2018, Olmetti attempted to climb into his upper bunk and fell to the floor, sustaining severe injuries.  R. 90-3 (Olmetti Dep. Tr. at 225:3–23) (Page ID #1897); R. 95-7 (Photo of Olmetti in Cell) (Page ID #2148); R. 96-3 (EMS Rep. at 2) (Page ID #2228).  His cellmate called for help, and officers called EMS.  R. 96-2 (Mezsets Incident Rep. at 1) (Page ID #2224).  Olmetti was taken to the hospital in an ambulance.  *Id.*

---

[1]A low-bunk pass is issued to prisoners who cannot safely climb onto an upper bunk bed because of physical limitations.  *See* R. 69-1 (Sherwood Dep. Tr. at 33:4–36:9) (Page ID #552).

Two correctional officers, defendants Linsea and King, accompanied Olmetti to the hospital with the EMS team. *Id.* Olmetti reported pain in his head, forearm, and ribs to EMS. R. 96-3 (EMS Rep. at 2) (Page ID #2228). He also reported numbness in his left hand to a nurse at the hospital. R. 96-9 (Debenham Dep. Tr. at 86:12–18) (Page ID #2359). The resident who treated Olmetti testified that he suffered two acute rib fractures and a possible third fracture, and that the primary method of treatment for a broken rib or rib fracture was immobilization. R. 96-9 (Debenham Dep. Tr. at 36:17–37:5, 41:18–42:6) (Page ID #2346, 2347–48). She treated his scalp laceration with six staples and gave him morphine and Haldol for his pain. *Id.* at 24:17–19; 53:14–21 (Page ID #2343, 2350). He was discharged from the hospital with a sling for his left arm, an incentive spirometer to encourage deep breathing, and a prescription for pain medication. *Id.* at 83:1–3; 91:7–17 (Page ID #2358, 2360).

The facts as set out by the plaintiff are as follows. As Officers King and Linsea escorted Olmetti out of the hospital with his hands cuffed in front of him, they each forcefully grabbed one of his arms and pulled him back and forth between them as they approached the car, causing him severe pain. R. 90-2 (Olmetti Dep. Tr. Pt. 1 at 115:2–9) (Page ID #1869). Officer King then handcuffed Olmetti behind his back so tightly that he had tears in his eyes, and Linsea and King laughed at him when he asked them to loosen his cuffs. R. 91-3 (Olmetti Dep. Tr. Pt. 6 at 612:23–613:22) (Page ID #2002). They pushed him into the car and ignored him as he begged them to loosen the cuffs. R. 90-2 (Olmetti Dep. Tr. Pt. 1 at 115:13–19) (Page ID #1869). Linsea and King did not check his handcuffs in response. R. 91-3 (Olmetti Dep. Tr. Pt. 6 at 642:11–20) (Page ID #2009).

Olmetti filed a lawsuit under 42 U.S.C. § 1983, alleging a claim of excessive force against King and Linsea, both for the excessively tight handcuffing and for using excessive force when escorting him back to the transport vehicle outside of the hospital.[2] R. 1 (Compl. ¶¶ 60–64) (Page ID #9). King and Linsea filed a motion for summary judgment. R. 68 (Mot. for Summ. J.) (Page ID #507). The magistrate judge issued a report and recommendation, recommending that summary judgment be granted on the handcuffing claim because Olmetti did not show that he suffered any physical injury as a result of the handcuffing. R. 113 (R&R at 18–19) (Page ID #3021–22). The magistrate judge recommended that the district court not grant summary judgment on the excessive force claim for the officers' behavior while transporting Olmetti back to the transport vehicle, which it termed "manhandling," *id.* at 20–21 (Page ID #3023), because, under the facts as alleged by Olmetti, King's and Linsea's use of force was not necessarily de minimis and a genuine issue of material fact existed as to whether King and Linsea used excessive force when transporting Olmetti, *id.* at 22–23 (Page ID #3025–26).

Both Olmetti and the defendants, King and Linsea, filed objections to the magistrate judge's report and recommendation. R. 116 (Obj. by Defs. to R&R at 2–6) (Page ID #3073–77); R. 118 (Obj. by Pl. to R&R at 15–20) (Page ID #3101–06). The district court adopted the report and recommendation in part and rejected it in part. R. 142 (Op. at 1) (Page ID #3667). The district court rejected the magistrate judge's recommendation with regard to the handcuffing claim, finding that Olmetti had produced medical records to document his hand pain and numbness and that there was a genuine dispute of material fact as to whether the handcuffing caused or

---

[2]Olmetti initially named seven defendants and asserted five claims for relief. R. 1 (Compl. at 1–2, 6–11) (Page ID #1–2, 6–11). The two claims against King and Linsea are the only ones at issue in the instant appeal.

exacerbated his injuries. *Id.* at 10–11 (Page ID #3676–77). The district court accepted the magistrate judge's recommendation with regard to the manhandling claim, finding that it is clearly established that it is unreasonable for an officer to use gratuitous violence when a pretrial detainee does not pose a safety risk. *Id.* at 19 (Page ID #3685).

King and Linsea timely filed a notice of appeal. R. 145 (Notice of Interlocutory Appeal at 1–2) (Page ID #3689–90).

## II. JURISDICTION

The courts of appeals have appellate jurisdiction over "'final decisions' of the district courts." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (quoting 28 U.S.C. § 1291). Though a denial of summary judgment is ordinarily a non-final order, "under the collateral-order doctrine[] 'a limited set of district-court orders are reviewable' even though they are 'short of final judgment.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 896 (6th Cir. 2019) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 239 (6th Cir. 2016)). A district court's denial of a motion for summary judgment on the ground of qualified immunity is an appealable collateral order "to the extent that it turns on an issue of law." *Watkins v. Healy*, 986 F.3d 648, 658 (6th Cir. 2021) (quoting *Forsyth*, 472 U.S. at 530). Because the officers "concede the most favorable view of the facts" for the purposes of this appeal, Appellant Br. at vii (quoting *Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018)), we have appellate jurisdiction to review the district court's denial of qualified immunity to King and Linsea.

## III. ANALYSIS

### A. Standard of Review

We review de novo a denial of summary judgment on the ground of qualified immunity. *Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015). At summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in its favor. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 805–06 (6th Cir. 2020). If, considering all the evidence in the light most favorable to the nonmoving party, the court concludes that a reasonable jury could return a verdict for the nonmoving party, summary judgment is not appropriate. *Baynes*, 799 F.3d at 606.

### B. Qualified Immunity Test

"A government official is not entitled to qualified immunity if the official's conduct violated a constitutional right and that right was 'clearly established' such that" a reasonable officer would know that the conduct was unlawful. *Hughey v. Easlick*, 3 F.4th 283, 288 (6th Cir. 2021) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Here, the defendants argue that Olmetti has not shown a constitutional violation and that, even if he has, his constitutional right was not clearly established.

### C. Handcuffing Claim

In order to determine whether "unduly tight or excessively forceful handcuffing" constitutes excessive force, we apply a three-part test. *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). "At the summary judgment stage, a plaintiff must create a genuine dispute of material fact that '(1) [they] complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from

6

the handcuffing.'" *Hughey*, 3 F.4th at 289 (alteration in original) (quoting *Morrison*, 583 F.3d at 401). Here, the defendants contest only the third requirement, the showing of a physical injury. Appellant Br. at 15.

The defendants first contend that Olmetti has shown only a subjective feeling of pain and numbness, and they point to Olmetti's deposition transcript as evidence that he suffered no physical injury related to the handcuffing. When asked what injury he suffered, Olmetti responded that "[t]he injury I substained [sic] is the pain—they cause me a lot more pain than I needed to be put through, and that I shouldn't have been put through is what the answer to that would be." R. 69-6 (Olmetti Dep. Tr. at 245:7–10) (Page ID #614) (alteration in original). This court in *Hughey v. Easlick*, however, determined that a plaintiff responding "no" to a question of whether she had suffered an injury related to being handcuffed did not preclude a finding of a genuine dispute of material fact. 3 F.4th at 291. Plaintiffs are likely unfamiliar with the complicated caselaw surrounding excessive-force claims and may interpret the word "injury" more narrowly than the courts have in this context. *Id.* The Sixth Circuit has held that lingering ring marks around the wrists, bruising, swelling, and numbness are all adequate indications that handcuffs were excessively tight and caused injury. *Id.* An ordinary person like Olmetti might not think that ring marks, bruising, swelling, or numbness constitute injuries, but they do in this context.

The defendants then argue that a plaintiff bringing a handcuffing claim must show an "obvious physical problem" as an injury. Reply Br. at 2 (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005)). This is a misstatement of our precedent and a misquote of *Lyons*. In *Lyons*, referring to the second prong of the handcuffing inquiry, which asks whether the plaintiff complained that the cuffs were too tight, we stated that a plaintiff must show *either* "an obvious

physical problem caused by the handcuffs *or* a plea by the [plaintiff] to loosen them," because otherwise an officer would have no reason to know that the cuffs are too tight. 417 F.3d at 576 (emphasis added). This "obvious physical problem" language is irrelevant to whether the plaintiff suffered an injury. The correct inquiry is instead whether the plaintiff has suffered "'some physical injury' resulting from the handcuffing." *Hughey*, 3 F.4th at 289 (quoting *Morrison*, 583 F.3d at 401). That by no means excludes injuries that are not obvious to the eye. In *Baynes*, we held that the plaintiff's testimony that he experienced pain and numbness while handcuffed was sufficient to create a genuine dispute of material fact as to whether he had suffered a physical injury. 799 F.3d at 609. We then stated that his production of medical records indicating that he was treated for wrist injuries, was diagnosed with bilateral radial neuropathy, and was required to wear wrist braces for a year would also have satisfied this requirement. *Id.*

The defendants next argue that Olmetti has not shown any corroborative evidence that he suffered an injury from being handcuffed too tightly, and that he alleges only subjective pain and numbness. Appellant Br. at 16. We have held that a plaintiff's testimony that he experienced numbness was sufficient to survive summary judgment. *Baynes*, 799 F.3d at 609. And just as in *Baynes*, Olmetti's allegations of pain and numbness do not stand alone. As the district court recognized, Olmetti provided contemporaneous medical records that support his claims of hand pain and numbness. R. 142 (Op. at 10) (Page ID #3676); R. 97-1 (4/4/2018 Progress Note at 1) (Page ID #2367); R. 87-4 (4/22/2018 Nursing Encounter Tool at 1) (Page ID #1723); *see also* R. 118-6 (Med. Records at 1–6) (Page ID #3176–81).

The defendants point to *Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010), in which a plaintiff could not satisfy the third prong of the handcuffing inquiry because his assertions that

he had a continuing inability to use his hands and that he lost color in his hands for more than a day after his arrest were "not supported by his medical records or the intake form he completed during his arrest," *id.* at 252. They claim that *Miller* held that a failure to report at intake new handcuff-related injuries "forecloses the possibility of finding a physical injury" in a handcuffing case. Appellant Br. at 21. We made no such statement in *Miller*. In *Miller*, we held that the district court properly concluded that the defendant had not used excessive force in handcuffing the plaintiff because the plaintiff was unable to show that the defendant ignored his complaints of tight handcuffs and because he was unable to show an injury from the handcuffing, even though he "stated in his deposition that he lost color in his hands for more than a day after the arrest and has a continuing inability to use his hands." *Miller*, 606 F.3d at 252. We referred to the plaintiff's medical records, which did not support his assertion at his deposition that he was unable to use his hands after the handcuffing. *Id.* The medical records at issue in *Miller* indicated that the plaintiff experienced tingling and numbness in his left hand *after he slept on it*, not after being handcuffed. Med. Records at 1, *Miller v. Sanilac County*, 2009 WL 416438, No. 2:07-cv-14965-PJD-SDP (E.D. Mich. Feb. 18, 2009) R. 30-15. Here Olmetti's medical records indicate ulnar and radial neuropathy dating back to Olmetti's fall from his bunk at KCCF—the same date as the handcuffing. R. 118-6 (Med. Records at 1–6) (Page ID #3176–81). To be sure, the records reference his fall from the bunk. They also specify that the neuropathy "likely" stems from the elbow or just below. *Id.* at 5 (Page ID #3180). Whether that injury resulted from the handcuffing is a question for a jury. Olmetti has shown a genuine dispute of material fact as to whether he suffered injury from unduly tight handcuffs.

Finally, the defendants argue that Olmetti's right not to be handcuffed in an excessively forceful way is not clearly established. But "this Court [has] directly and unequivocally determined, time and time again, that unduly tight or excessively forceful handcuffing" is unconstitutional, and thus this argument is unavailing. *Baynes*, 799 F.3d at 613; *Hughey*, 3 F.4th at 293; *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) (unduly tight handcuffing is unconstitutional); *Morrison*, 583 F.3d at 401 (same); *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (same); *Martin v. Heideman*, 106 F.3d 1308, 1312–13 (6th Cir. 1997) (same).

## D. Manhandling Claim

With respect to the general excessive-force claim, we must ask whether the force used purposely or knowingly against Olmetti was objectively reasonable. When conducting this inquiry, we must consider "the perspective of a reasonable officer on the scene, including what the officer knew at the time"; the legitimate interests of the government in managing a pretrial detainee; "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Coley v. Lucas County*, 799 F.3d 530, 538 (6th Cir. 2015) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 394, 397 (2015)). A pretrial detainee can show that a use of force is excessive by showing that "the challenged governmental action is not rationally related to a legitimate governmental objective or . . . is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398.

"We have long held that a plaintiff may 'allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.'" *Coley*, 799 F.3d at 539 (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999)). The inquiry depends instead on whether the *force* was excessive or de minimis, rather than whether the *injury* suffered was de minimis, because injury and force are not perfectly correlated. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010). Although the defendants have argued that a plaintiff must show some physical injury in order to succeed on a claim for excessive force, we have previously held otherwise. In *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509 (6th Cir. 2006), we upheld a denial of qualified immunity at summary judgment for a police officer who slapped a handcuffed arrestee, *id.* at 513–14. We reasoned that, though the slap did not cause significant physical injury, there was no government interest in slapping the plaintiff, and therefore it could be considered gratuitous violence. *Id.* at 513; *see also Carico v. Benton*, 68 F. App'x 632, 637 (6th Cir. 2003) (plaintiff "can clearly claim excessive force against [the officer] for the slap to the face"); *Evans v. Plummer*, 687 F. App'x 434, 441 (6th Cir. 2017) ("[T]he unreasonable infliction of 'intense physical pain' is sufficient to give rise to an excessive-force claim; there is no requirement that the excessive force cause a permanent or visible injury" (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996))).

Here, Olmetti has alleged that, as he was escorted out of the hospital, having been diagnosed with at least two acute rib fractures, defendants King and Linsea grabbed him and pulled him back and forth, causing him serious physical pain. There was no suggestion that Olmetti was resisting his transport back to the car, that he was in distress, or that he had been combative with medical staff at the hospital. The defendants contend that they knew that Olmetti "had a history

11

of assaulting medical personnel." Appellant Br. at 25. They have not, however, provided any evidence to indicate that he had done so on this day, or that he was doing so such that the officers would have a legitimate governmental reason for pulling him back and forth as they escorted him to the car. Indeed, they recognize that when Olmetti was discharged from the hospital, he was "in no apparent distress." Appellant Br. at 26 (quoting R. 70-11 (Spectrum Records at 2) (Page ID #709)). At this stage of the proceedings, we must consider all of the evidence in the light most favorable to Olmetti, and Olmetti's sworn testimony that the defendants manhandled him constitutes evidence of the same. He contends that the officers did more than exercise minimal force over him; he testified that they "manhandled" him and caused him severe pain. R. 69-6 (Olmetti Dep. Tr. at 316:8–9, 614:4–10) (Page ID #621, 633). Taking the evidence in the light most favorable to Olmetti, as we must at summary judgment, we conclude that a reasonable jury could conclude that King and Linsea used excessive force by manhandling Olmetti while escorting him to the car.

We must now consider whether Olmetti's constitutional right was clearly established. We have held that "pretrial detainees ha[ve] a clearly established right not to be gratuitously assaulted while fully restrained and subdued." *Coley*, 799 F.3d at 540; *see also Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). In *Coley*, we held that shoving a pretrial detainee who was handcuffed and in a belly chain and leg irons constituted a gratuitous assault. 799 F.3d at 539–40. Like the plaintiff in *Coley*, Olmetti was handcuffed and in a belly chain and leg irons throughout the incident and Linsea testified that the restraints would have been removed only if a doctor or medical professional requested their removal for a medical reason. R. 85-5 (Linsea Dep. Tr. at 13:25–14:6, 53:2–10, 61:2–6, 61:13–62:1; 82:25–83:10) (Page ID #1568, 1578, 1580, 1585). This

case is not materially distinguishable from *Coley*. Olmetti's prior instance of being combative with medical professionals was not relevant when he had just been treated for several hours in a hospital for broken ribs and a head injury without incident; nor would it have justified roughly pulling him back and forth when he was not resisting at the time. R. 85-5 (Linsea Dep. Tr. at 72:3-8) (Page ID #1582). We therefore determine that Olmetti's constitutional right not to be gratuitously assaulted while fully restrained and nonresistant was clearly established.

## IV. CONCLUSION

Accordingly, because Olmetti has established that there is a material dispute of fact as to whether defendants King and Linsea used excessive force when they handcuffed him and manhandled him on the way out of the hospital, we **AFFIRM** the district court's order denying qualified immunity.