**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0665n.06**

**No. 08-1968**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DARYL KEITH JONES, | ) | **FILED**<br>**Sep 29, 2009**<br>LEONARD GREEN, Clerk |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOSE GARCIA and MIKE MILLER, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |

Before: SUTTON, KETHLEDGE and WHITE, Circuit Judges.

SUTTON, Circuit Judge. After Daryl Jones suffered a dislocated shoulder during the course of an arrest by two police officers, Jose Garcia and Mike Miller, he filed a § 1983 action against them, alleging excessive force. Because Jones' excessive force claim raises a material dispute of fact, we reverse the district court's grant of summary judgment in favor of Officer Miller. We affirm the denial of Jones' motion to amend his complaint and the dismissal of Officer Garcia.

I.

On April 14, 2004, at 2 a.m., police saw Jones breaking into and apparently stealing from parked cars located in Pontiac, Michigan. When Jones saw the police, he fled. He eventually stopped, however, and, consistent with the officers' orders, agreed to lay face down on the ground

and allow the officers to handcuff him behind his back. While he lay there, Jones told Officer Miller that he had previously injured his right shoulder and asked to be picked up by the left arm. ROA 62.

There are two versions of what happened next. According to Jones' deposition testimony, Officer Miller "snatched" him up by the right arm. ROA 62. Jones felt a sharp pain in his injured shoulder, heard a "pop," then yelled "ow." *Id*. According to Officer Miller, he "rolled [Jones] to the side and helped him get to one knee," and from there he helped him to stand. ROA 92. Officers Miller and Garcia deny that Jones yelled out in pain or that there was an audible "pop."

Jones spent the rest of the night in a cell at the Pontiac Police Department. In the morning, he complained to the officer on duty of pain in his shoulder. At that point, the police took Jones to the hospital, where medical personnel treated him for a dislocated shoulder. About a year later, Jones had surgery on the same shoulder. Jones pled guilty to (1) larceny from a motor vehicle and (2) breaking and entering a motor vehicle and causing damage to the vehicle.

Jones filed a § 1983 action against Officers Miller and Garcia in 2007. After discovery, the officers moved for summary judgment on the excessive force claim and argued that the allegations did not support any claim against Officer Garcia. In response, Jones withdrew his excessive force claim against Officer Garcia and moved to amend his complaint to include allegations of deliberate indifference against both officers. The district court denied Jones' motion to amend and granted summary judgment for the officers.

II.

A.

To overcome the officer's qualified immunity, Jones must show that (1) the facts, taken in the light most favorable to Jones, "show the officer's conduct violated a constitutional right," and (2) the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *overruled on other grounds by Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 818 (2009). We give fresh review to the district court's grant of summary judgment, and will affirm if the record "show[s] that there is no genuine issue as to any material fact"—which is another way of saying that no reasonable jury could rule for Jones. Fed. R. Civ. P. 56(c); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Fourth Amendment prevents law enforcement from using objectively unreasonable applications of force in the course of making an arrest. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). The question here is not whether that right is clearly established; all agree that it is. The question is whether Officer Miller violated the prohibition—or at least whether there is a material issue of fact that he did. Viewed in the light most favorable to Jones, the evidence supports a plausible theory of excessive force to present to the jury.

Before Officer Miller's alleged use of excessive force, according to Jones, he had stopped running from the police, had complied with their orders by laying face down on the ground, was handcuffed behind his back and had warned the police of his pre-existing shoulder injury. At that point, Officer Miller had no justification for "snatch[ing]" Jones and hauling him from prone to

No. 08-1968
*Jones v. Garcia, et al.*

standing by his injured arm. ROA 62; *see McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (need for force is "nonexistent" when suspect is handcuffed and "not trying to escape or hurt anyone"). If allegations of "excessively forceful handcuffing," *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (quotation marks omitted), and twisting a suspect's limb to turn him over, *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009), create triable issues of fact over excessive force, so does "snatch[ing]" a suspect by his injured arm (and shoulder) and taking him from a prone to standing position in one motion. *Cf. Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) ("An excessive use of force claim could be premised on [the officer's] handcuffing [the suspect] if he knew that she had an injured arm and if he believed that she posed no threat to him.") *superseded by statute on other grounds as recognized in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007).

As with excessive-force claims arising from improper handcuffing, this is not a case where the suspect merely registered subjective complaints of pain. *Cf. Lyons v. City of Xenia*, 417 F.3d 565, 575–76 (6th Cir. 2005); *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001). After the incident, Jones had a dislocated shoulder, which could show that the injury arose from more than the inevitable force needed to make an arrest.

The officers respond that Jones' account of the arrest and shoulder injury is so implausible that it does not constitute a "*genuine* issue as to any material fact." Fed R. Civ. P. 56(c) (emphasis added); *see Scott*, 550 U.S. at 380; *cf. Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

- 4 -

How, they ask, could an officer lift a 220-pound suspect directly to his feet by lifting him with his one arm? Only a "superhuman" officer could perform such a lift, Appellees' Br. at 12, making it an implausible allegation, one not worth crediting at summary judgment. The district court came to the same conclusion, explaining that it would be "implausib[le], if not impossib[le] [for] somebody of [Jones'] size [to] have been raised with one arm . . . ." R.42 at 12. Instead, the officers (and the district court) maintain that Officer Miller gave the only plausible account of what happened. While the officers knew about Jones' bad shoulder and agree that he was handcuffed face down, they say that Officer Miller did not "snatch" him by his bad arm and shoulder. Miller instead rolled Jones to his side, then helped him to one knee, then helped him to stand. All of that is reasonable as a matter of law, they conclude, whether Jones' pre-existing shoulder problems suffered additional injury through this process or not.

This is a close call. Once we draw all reasonable inferences in Jones' favor, however, it is difficult to maintain that Jones' testimony is "blatantly contradicted by the record," *Scott*, 550 U.S. at 380. Jones' account that he was "snatched" from prone to standing by the arm connected to his bad shoulder in one fell and mean-spirited swoop is not factually implausible. It would not require Officer Miller to lift Jones' 220-pound body into the air, using Jones' one arm, as the officers suggest. It would require Officer Miller to lift Jones to his feet, which consists of maneuvering his torso and upper body, not his whole body, and which does not require lifting the full body off the ground. The officers may be right that most jurors (and most lawyers) will pause over the physics, or at least likelihood, of Jones' account of the incident. But Jones' account does not require such

a suspension of reality that no reasonable juror could accept it, and that is enough to allow a jury to hear the claim. That Jones may have a difficult time winning his case does not disable him from trying, at least so far as Rule 56 is concerned.

The officers also claim that Jones contradicted himself during his deposition and ultimately corroborated the officers' recollection. The first time Jones described how Officer Miller lifted him from the ground, he said:

> I told him I had a bad shoulder; I had an accident a couple of years ago. And besides, you know, rolling me over, you know, in the sitting position and then standing me up, he just snatched me up while I was laying on my stomach, and that's when the injury occurred.

ROA 58. Later, the officers point out, Jones said that Officer Miller "just snatched me up" and pulled him "straight to [his] feet." ROA 62. We do not see the contradiction. As we read the first statement, which admittedly is not a picture of clarity, Jones is contrasting what Officer Miller did ("just snatched me up") with what he should have done ("rolling me over . . . in the sitting position and then standing me up"). Context and the signal provided by the word "besides" both support the point. And the officers' interpretation—that Jones was contradicting himself—does not flow unassailably from the transcript but instead requires the insertion of other words to make sense. Any ambiguity in the quoted statement, in short, does not support dismissing Jones' claim as a matter of law.

The officers add that, even under Jones' version of events, Officer Miller's conduct amounts to no more than "negligence," not the intentional infliction of needless force. *See Malley v. Briggs*,

- 6 -

475 U.S. 335, 341 (1986). But this again is a question for the jury. If Jones is right that Officer Miller "snatched" him from prone to standing using solely the arm connected to his bad shoulder, after he had warned Miller and Garcia of the pre-existing injury, a reasonable jury could conclude that Miller used "objectively unreasonable" force in making the arrest. *Graham*, 490 U.S. at 388. That is enough to deny Miller's motion for summary judgment.

B.

Jones separately argues that the district court should have permitted him to amend his complaint to add a claim of deliberate indifference. Abuse-of-discretion review applies to this argument. *See R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 433 (6th Cir. 2005).

We see no reason to second guess the district court's exercise of discretion. Jones' motion to amend the complaint came more than three months after the dispositive motion deadline had passed and several months after the parties had completed discovery. The motion appears to have been prompted only by the officers' motion for summary judgment, which pointed out that Jones had not raised a deliberate indifference claim or any other viable claim for that matter against Officer Garcia. On this record, Jones has failed to show "good cause" for not filing the motion earlier. Fed. R. Civ. P. 16(b)(4); *see Leary v. Daeschner*, 349 F.3d 888, 907–09 (6th Cir. 2003).

Making matters worse, Jones knew all of the relevant facts underlying a deliberate-indifference claim from the beginning. *Cf. Leary*, 349 F.3d at 907–09. And Jones was directly reminded of the point at his deposition, but he still did nothing. At the deposition, the officers'

counsel asked Jones' counsel, "So we're not looking at a deliberate indifference claim here?" ROA 159. Jones' counsel responded, "No. . . . That isn't even in the lawsuit and would have nothing to do with the police department." ROA 159. Although the officers raised this in their response to Jones' reply to the summary judgment motion, Jones did not respond to this argument below, nor does he on appeal. The officers thus had every reason to believe, based on the complaint itself and the statements of Jones' counsel, that Jones did not claim deliberate indifference, and they structured their discovery accordingly. Given the lengthy delay in moving to amend the complaint, and given the difficulty the court had already experienced with deposing the incarcerated Jones, *see* R. 14 at 1; R. 20 at 1–4, we see no clear error in the finding that the officers would be "unduly prejudic[ed]" by allowing amendments to the complaint. R.42 at 13; *see Tuttle v. Metro Gov't of Nashville*, 474 F.3d 307, 321–22 (6th Cir. 2007).

## III.

For these reasons, we reverse the grant of summary judgment, affirm the denial of the motion to amend, affirm the dismissal of Officer Garcia from the case and remand the remainder of the case for further proceedings.