**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0259n.06

**No. 09-1555**

**FILED**

**Apr 27, 2010**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DANIEL JOSEPH SOLOVY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| CITY OF UTICA POLICE OFFICER GREGORY | ) | District of Michigan |
| MORABITO, badge no. 15; CITY OF UTICA POLICE | ) | |
| SERGEANT JEROME CARROLL, badge no. 873; | ) | |
| CITY OF UTICA, jointly and severally, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:     BOGGS and NORRIS, Circuit Judges; and ADAMS, District Judge.[*]

        BOGGS, Circuit Judge.  Daniel Solovy brought an action pursuant to 42 U.S.C. § 1983 alleging that two members of the Utica police department, Sergeant Jerome Carroll and Officer Gregory Morabito, violated his Fourth Amendment right to be free from excessive force.  Solovy claimed that Sergeant Carroll and Officer Morabito applied excessive force when they used handcuffs to pull him from his vehicle and force him to the ground, ignored his complaints that his handcuffs were too tight, and picked him up by the handcuffs. The district court granted summary judgment in favor Sergeant Carroll and Officer Morabito, concluding that there was no evidence that Officer Morabito utilized any force and that Sergeant Carroll's use of force was reasonable.  On

---

        [*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

appeal, Solovy challenges the district court's judgment only insofar as it pertains to Sergeant Carroll. Because there is a genuine issue of material fact as to whether Sergeant Carroll used excessive force, and because Sergeant Carroll is not entitled to qualified immunity with respect to that claim, we reverse the order of the district court granting summary judgment to Sergeant Carroll.

## I

Solovy is a type-1 diabetic, who relies on an insulin pump to feed a constant stream of insulin into his body. At around 8:00 pm on June 29, 2006, Solovy's blood sugar fell to a dangerously low level. Recognizing that his blood sugar was low, Solovy drove to a gas station with the intention of purchasing food. He reached the gas station, but before he could purchase food, he succumbed to confusion caused by his low blood sugar. The last thing Solovy remembers before his encounter with the police is sitting in his car in the parking lot of the gas station.

Though he has no recollection of doing so, Solovy apparently drove his car from the gas station to the intersection of Auburn Road and Cass Avenue. At 10:12 pm, Sergeant Carroll discovered Solovy's vehicle interfering with traffic at that intersection. Solovy was unconscious in the driver's seat. Sergeant Carroll tapped on the window and awoke Solovy, who, according to Sergeant Carroll, "appeared confused, and also intoxicated." At around this time, Officer Morabito arrived on the scene, responding to reports of "a man in traffic slumped over the wheel." Officer Morabito found Sergeant Carroll attempting to speak to Solovy, who was still in his vehicle.

At this point, the accounts of what transpired diverge. According to Solovy, the officer who knocked on his window asked him to open the car door. Solovy unlatched the door and the officer opened it. Solovy told the officer that he needed food, but said nothing else. The officer reached

into Solovy's vehicle and handcuffed Solovy's right hand. Using the other end of the handcuffs, the officer then "ripped [Solovy] out of the car" and forced him "onto the ground, the cement." Once Solovy was face down on the ground, the officer began to handcuff his left arm to his right arm, behind his back. Solovy told the officer that he had a "bad locked shoulder,"[1] but the officer ignored him. Solovy complained that the handcuffs were too tight, but the officer again ignored him. One of the officers (Solovy is unsure which) then "grabbed the [handcuff] chain in the middle and just lifted [Solovy] up" and "set [Solovy] on the curb." This caused Solovy "agonizing pain and . . . [he] made all kinds of noise because it hurt so bad." Once on the curb, Solovy asked to have the handcuffs loosened, but the officers disregarded his complaints. Solovy remained handcuffed while awaiting the arrival of EMS, though Solovy acknowledges that the handcuffs were removed at some point before he got into the ambulance. Solovy lost consciousness after getting into the ambulance, but later awoke on the ambulance gurney to find his left wrist bleeding.

Officer Morabito and Sergeant Carroll provide starkly different accounts of the encounter. Both officers maintain that they never handcuffed Solovy. According to Sergeant Carroll, while Solovy was still in his vehicle, Officer Morabito approached the passenger side of the vehicle and, glancing through the window, recognized Solovy's insulin pump. Officer Morabito informed Sergeant Carroll of this discovery and the two officers decided to call EMS. Sergeant Carroll asserts that Solovy "was combative before he was placed in the EMS vehicle, but with the assistance of the

---

[1]According to Solovy, this condition prevents him from "taking [his] arm from the front of [his] body and getting [it] behind [his] body more than just to the side of [his] body." R. 24, Ex. C at 70.

EMTs and Officer Moraito he was placed on a cot when the intravenous injections were commenced."

According to Officer Morabito, after he arrived on the scene, he approached the driver's side of Solovy's vehicle, to provide back-up for Sergeant Carroll. Sergeant Carroll asked Solovy to get out of the vehicle, "the door was opened," and Solovy voluntarily got out of the car. At this point, Officer Morabito shifted position relative to Solovy, though he remained on the driver's side of the vehicle. From his new vantage point, Officer Morabito saw Solovy's insulin pump. Recognizing that Solovy might be having a diabetic episode, the officers summoned EMS. In the meantime, Officer Morabito inspected Solovy's vehicle and discovered "a cup with light brown fluid in it" that "[s]melled like intoxicants." Nevertheless, the officers did not investigate Solovy for drinking and driving or administer any sobriety tests.

EMS arrived on the scene at 10:22 pm. Solovy was not handcuffed at the time EMS began treating him. According to the ambulance report, Solovy was "confused" and had extremely low blood sugar. The report also indicated that Solovy had consumed alcohol, but Solovy denies ever telling the paramedics this. The report did not indicate that Solovy was combative. The paramedic who completed the report testified that he "absolutely" would have noted if Solovy was combative, but the other paramedic on the scene indicated that the report might or might not include such information. The paramedics administered a dextrose solution through an IV drip, which raised Solovy's blood sugar to a safe level. Solovy declined further care or transport to the hospital.

Sergeant Carroll contacted Solovy's mother, Judith Solovy, at 10:39 pm and asked her to pick up her son. After Solovy returned home, he began to experience progressive numbness and

weakness in his right hand and wrist. The day after the incident, Solovy went to the emergency room complaining of "numbness, weakness and pain to the right hand and wrist, as well as multiple other traumatic abrasions and bruises." The emergency room report noted that Solovy had "multiple abrasions of his wrists, as well as ecchymoses[1] and pain to the right knee area."

Solovy later saw Dr. Geoffrey Seidel, who performed nerve conduction studies on Solovy's right arm. Dr. Seidel found "evidence of right radial sensory neuropathy likely secondary to handcuff." Further testing confirmed "right radial neuropathy from a handcuff injury."

On May 28, 2008, Solovy filed a § 1983 action against Sergeant Carroll and Officer Morabito in the United States District Court for the Eastern District of Michigan. Solovy alleged arrest without probable cause, excessive force, and deliberate indifference to his medical needs. On March 30, 2009, the district court granted summary judgment on all claims. The court found that Sergeant Carroll and Officer Morabito had probable cause to seize and restrain Solovy, and that they were attentive to Solovy's medical needs. With respect to Solovy's excessive force claim, the court found no evidence that Officer Morabito used any force. Turning to Sergeant Carroll, the court concluded that the evidence tended to show that "Sergeant Carroll used some force, but not excessive force." Because the court found Sergeant Carroll's use of force reasonable, it did not address the issue of qualified immunity.

---

[1]Ecchymosis is "the escape of blood into the tissues from ruptured blood vessels marked by a livid black-and-blue or purple spot or area." *Webster's Third New International Dictionary* 718 (1986).

Solovy filed a timely appeal. On appeal, Solovy has abandoned all claims except for his excessive force claim against Sergeant Carroll.

**II**

Solovy first challenges the district court's conclusion that he failed to create a genuine issue of material fact as to whether Sergeant Carroll's use of force was reasonable. This court reviews a district court's order granting summary judgment *de novo*. *Havensure, L.L.C. v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315 (6th Cir. 2010). Summary judgment is only appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, this court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A citizen's claim that law enforcement officials used excessive force in making a seizure is reviewed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment, the court must balance the "individual interest in being free from unreasonable seizures" against the "important government interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396). The court must thus afford careful attention to the facts

and circumstance of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Looking to the facts and circumstances of the present case, Solovy has presented sufficient evidence to create a genuine issue of material fact as to whether Sergeant Carroll used unreasonable force. First, Solovy's own account describes a situation of excessive force, and nothing in the record makes that account inherently unbelievable or impossible. *Cf. Brandenburg v. Cureton*, 882 F.3d 211, 216 (6th Cir. 1989) (finding summary judgment inappropriate when the parties presented plausible contradictory accounts of events). The evidence in the record could lead a reasonable jury to conclude that Solovy's version of events is true. In particular, the emergency room report records abrasions to Solovy's wrists and bruising to his knee that tend to corroborate Solovy's claim that he was handcuffed and forced to the ground. Similarly, Dr. Seidel's reports observe radial neuropathy attributable to handcuffing, which tends to support Solovy's claim that the handcuffs were applied with some force. This evidence contradicts both Sergeant Carroll's and Officer Morabito's accounts, which deny any use of handcuffs. Combined with the disparities between the two officers' accounts, this evidence could lead a reasonable jury to disbelieve the officers and believe Solovy.

Under Solovy's version of events, there are three bases for finding that Sergeant Carroll applied excessive force. First, given the circumstances, Sergeant Carroll's use of handcuffs to "rip" Solovy out of his vehicle and force him to the ground was objectively unreasonable. Although Sergeant Carroll apparently suspected Solovy of drunk driving, Solovy was not engaged or attempting to engage in illegal conduct when Sergeant Carroll approached Solovy's vehicle–rather,

he was unconscious. Once awakened, Solovy appeared confused, possibly intoxicated, and had difficulty responding to questions, but he apparently did not engage in any threatening or hostile conduct.[1] Moreover, Solovy did not disregard Sergeant Carroll's commands or resist arrest; to the contrary, he complied when Sergeant Carroll asked him to open his car door.

In light of these circumstances, Solovy posed no apparent safety risk to the public or to the police,[2] and Sergeant Carroll's use of violent force to remove Solovy from his vehicle was gratuitous and therefore unreasonable. *See Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 171, 174 (6th Cir. 2004) (finding that throwing the plaintiff into a wall and forcibly handcuffing her was unreasonable where the crime at issue was a minor offense, the plaintiff posed no apparent threat to the officers or to others, and the plaintiff, although initially resistant, complied with the officers' instructions and did not flee); *see also Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688

---

[1]Whether Solovy was "combative" is a fact in dispute. Sergeant Carroll claims that Solovy was combative, but Solovy does not describe any combative behavior, and the ambulance report records no such behavior. The district court emphasized Judith Solovy's testimony that Solovy was acting "aggressive." Ms. Solovy explained, however, that she did not refer to physical aggression, but rather she meant "if you were diabetic and I said to you, you're going to take this orange juice, you'd say, I don't need it. I'm handling it. I'm okay." She further noted that even when Solovy was in such a state, he would comply with her orders. Finally, Ms. Solovy testified that she was unaware of her son ever becoming physically aggressive during a diabetic episode.

[2]The district court emphasized the unpredictability of intoxicated persons as a safety concern. Yet while heavy intoxication may, on its own, render it reasonable to handcuff an individual, the reasonableness of the force used to effectuate the seizure of the individual in order to handcuff him will generally depend upon other circumstances, such as the individual's resistance and hostility. *See Marvin v. City of Taylor*, 509 F.3d 246 (6th Cir. 2007). The mere fact of intoxication does not justify gratuitous violence.

(6th Cir. 2006) ("Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest.").

Second, Solovy's version of events also supports the conclusion that Sergeant Carroll used excessive force by securing Solovy's handcuffs too tightly. In order for an excessive force claim based on unduly tight handcuffing to survive summary judgment, a plaintiff must offer sufficient evidence for a reasonable jury to find that "(1) he or she complained that the handcuffs were too tight; (2) the officers ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison v. Board of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)). Here, Solovy testified that he complained twice that his handcuffs were too tight, but the officers disregarded his complaints. Although the officers did remove Solovy's handcuffs prior to the arrival of EMS, medical reports tend to show that he suffered abrasions of his wrists and "right radial sensory neuropathy likely secondary to handcuff." This evidence is sufficient to create a genuine issue of material fact as to whether Sergeant Carroll used excessive force by handcuffing Solovy too

tightly.[1] *See id.* at 403 (noting that, in combination with ignored complaints, "[b]ruising, skin marks, and attendant pain" may be sufficient to create a genuine issue of material fact).

Third, based on Solovy's version of events, a jury could conclude that Sergeant Carroll lifted Solovy by the handcuffs and that the circumstances rendered this an unreasonable use of force. This court has "held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 608 (6th Cir. 2006). In this case, Sergeant Carroll forced Solovy to the ground and handcuffed him behind his back, thereby incapacitating him. While Sergeant Carroll was handcuffing Solovy, Solovy told him that he suffered a "bad locked shoulder." Nevertheless, one of the officers picked Solovy up using the handcuffs, resulting in "agonizing pain." Although Solovy could not see the officer who lifted him, it is reasonable to infer that Sergeant Carroll lifted him, given that Sergeant Carroll placed the handcuffs on Solovy's wrists immediately before he was lifted. The method Sergeant Carroll used to lift Solovy–pulling the chains of handcuffs secured behind Solovy's back to hoist his body weight–was almost guaranteed to cause substantial pain, especially to a person with a shoulder injury. Further, nothing suggests that this was a necessary or even an appropriate way to lift Solovy.

---

[1]Sergeant Carroll suggests that Solovy was handcuffed for too short a period to give rise to a Fourth Amendment violation, but he cites no case law supporting the proposition that a plaintiff must wear handcuffs for a minimum amount of time in order to recover. Nor does such a rule appear appropriate. Once an officer has handcuffed and neutralized a suspect, refusing to loosen overly tight handcuffs is a gratuitous use of force. Thus, if an officer simply chooses to ignore a suspect's complaints and thereby causes the suspect injury–even if that injury occurs in a relatively short span of time–the officer's use of force is excessive. This does not mean, of course, that every delay in attending a suspect's complaints will result in recovery: if circumstances render an officer unable to attend to a suspect's complaints immediately, the officer presumably will not be liable for excessive force so long as he addresses the suspect's complaints as soon as circumstances allow.

Thus lifting Solovy from the ground using his handcuff chains would be plainly unreasonable. *See Jones v. Garcia*, No. 08-1968, 2009 WL 3109826 (6th Cir. Sept. 29, 2009) (finding that an officer used excessive force when he allegedly "snatched" the plaintiff, who was lying face down on the ground and who alerted the officer to an injury to his right shoulder, up by the right arm).

Because there is sufficient evidence for a reasonable jury to conclude that Sergeant Carroll used excessive force, the district court erred when it concluded that Solovy failed to raise a genuine issue of material fact.

### III

Solovy next argues that Sergeant Carroll is not entitled to qualified immunity. To evaluate a claim of qualified immunity in excessive force cases, this court engages in a two-part inquiry.[1] *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). First, the court asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Ibid.* Second, the court determines whether the constitutional right allegedly violated was "clearly established." *Ibid.* A right is clearly established if "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Bouggess v. Mattingly*, 482 F.3d 886, 694 (6th Cir. 2007) (quoting *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987)). An officer is "on notice" that his conduct violates clearly established constitutional rights "if the state of the law at the

---

[1]The court may consider the two parts of the inquiry "in whatever order is appropriate in light of the issues before us." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)).

time of the alleged deprivation provides 'fair warning' that his actions are unconstitutional."

*Humphrey v. Mabry*, 482 F.3d 840, 852 (6th Cir. 2007) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

At the present stage of this case, Sergeant Carroll is not entitled to qualified immunity. First, as explained in our analysis above, Solovy's version of events supports a finding that Sergeant Carroll violated Solovy's Fourth Amendment right to be free from excessive force in three ways: (1) by using gratuitous and thus unreasonable force in removing Solovy from his vehicle; (2) by applying Solovy's handcuffs too tightly and ignoring his complaints, and (3) by using an unnecessary and painful method to lift Solovy from the ground after he had been incapacitated.

Second, the state of the law at the time that Sergeant Carroll deprived Solovy of his Fourth Amendment rights–that is, on June 29, 2006–provided Sergeant Carroll with fair warning that his actions were unconstitutional. Since 1989, the Supreme Court has held that a use of force that is not objectively reasonable violates the Fourth Amendment. *Graham*, 490 U.S. at 388. Prior to the events in question here, this court found that the gratuitous use of force against a compliant, non-threatening individual who had committed a relatively minor crime was not objectively reasonable. *See Solomon*, 389 F.3d at 167; *see also Shreve*, 453 at 688 ("Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest."). Likewise, this court acknowledged the Fourth Amendment right to be free from unduly tight or excessively forceful handcuffing during the course of a seizure at least as early as 2002. *Morrison*, 583 F.3d at 401 (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)).

Finally, this circuit's case law has recognized the unconstitutionality of using gratuitous force against an incapacitated suspect since 1991. *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002). In combination with case law regarding excessively forceful handcuffing, this provided any reasonable officer with "fair warning" that lifting an incapacitated suspect in the manner described in this case would violate the suspect's Fourth Amendment rights, at least where the suspect warned the officer that he had an injured arm. *Cf. Jones*, 2009 WL 3109826, at *2 (analyzing similar conduct).

Thus, based on Solovy's version of events, Sergeant Carroll violated Solovy's clearly established Fourth Amendment rights and is therefore not entitled to qualified immunity.

## IV

For the foregoing reasons, we REVERSE the order of the district court insofar as it applies to Solovy's excessive force claim against Sergeant Carroll, and REMAND the case to the district court for further proceedings.