COLE, Chief Judge,
dissenting in part.
The Cleveland Clinic Foundation claims it fired Loletia Wilson because she ignored a nurse’s instruction, violated Clinic policies against performing unsafe procedures, and did not follow department procedure for transporting patients with vaginal rods. But evidence indicates that the nurse never gave the alleged instruction, Wilson did not know the patient had vaginal rods, and the Clinic did not have a formal procedure for transporting such patients. Moreover, the Clinic fired Wilson before it received relevant witness statements, and it never disciplined the nursing assistant who performed the move with Wilson. In other words, Wilson put forth evidence that the Clinic’s reasons for firing her were pretex-tual. For that reason, and because she made out a prima facie case, as the majority admits, Wilson must be allowed to present her retaliatory termination claim to a jury.
Wilson may show pretext with evidence that the Clinic’s supposed reasons for firing her had no basis in fact, were not the actual reasons, or were insufficient to explain her termination. White v. Baxter Healthcare Corp., 533 F.3d 381, 392-93 (6th Cir.2008). At least five points support Wilson’s argument for pretext.
First, evidence exists that the nurse never gave Wilson the instruction Wilson supposedly ignored. Wilson testified as much at deposition. She also noted that the nurse simply walked away while Wilson and the nursing assistant prepared to move the patient. And she specifically testified that she never admitted that the nurse told her to wait for more help before moving the patient. The majority apparently concedes that this evidence creates a dispute about a material fact, but it claims the dispute is not “genuine.” A dispute is genuine “if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Surely a rational trier of fact could find for Wilson, given her sworn deposition testimony directly on point. See Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). If not, it is hard to imagine how a plaintiff could ever get past summary judgment when the only other eyewitnesses side with the defendant.
The majority dismisses Wilson’s testimony, instead resting its analysis on an internally-prepared Clinic document and Clinic witnesses’ deposition testimony. This the court may not do. “Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.” Anderson, 477 U.S. at 255, 106 S.Ct. 2505. The majority improperly credits the Clinic’s version of a material fact in the face of Wilson’s sworn testimony to the contrary. Wilson’s alleged admission that she heard the nurse’s instruction plays a key role in the majority’s attempt to discredit her arguments. That the majority may not rely on the admission spoils its analysis.
Second, Wilson did not know the patient had vaginal rods before she moved her. No one — not her manager, not the nurse, not the nursing assistant — ever mentioned *407 this important fact. So why would the Clinic punish Wilson for failing to follow a procedure she couldn’t have known she needed to follow? The majority has no answer to this question, falling back on the claim that Wilson nevertheless “caused or contributed to unsafe conditions.” It omits the rest of the alleged reason the Clinic fired Wilson: that she “caused or contributed to unsafe conditions as a result of her failing to abide by the nurse’s instruction to wait for additional help and her decision to move the patient herself” The evidence properly considered is that the nurse did not give Wilson an order before Wilson moved the patient.
The majority also relies on arguments not raised by the Clinic, including that the Clinic’s reasons for firing Wilson were not pretextual because Wilson waited fifteen minutes for the nurse to arrive before moving the patient. The majority infers that Wilson waited because she knew that moving the patient with only two people would be unsafe or unacceptable. But waiting for a nurse to lend a hand might be good practice, might make the move easier, or might simply be polite. Waiting does not necessarily imply that Wilson knew a two-person move would be improper. The majority’s inference against Wilson is inappropriate at this stage. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1848, 89 L.Ed.2d 538 (1986) (“[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.” (quotation marks omitted)).
Third, the Clinic did not have a formal procedure for transporting a patient with vaginal rods. Again the majority does not disagree. The nurse confirmed that the alleged procedure was not written, testifying that nurses on her floor “just ... know how to handle” a patient with vaginal rods and that lifting, rather than sliding, such a patient is “just [the procedure] we typically follow.” The majority also admits that Wilson never received training from the Clinic in the proper technique for moving a patient with vaginal rods. This evidence strongly suggests that a clear Clinic procedure for moving vaginal-rod patients simply did not exist, severely undercutting the Clinic’s claim that it fired Wilson for not following “department procedure.”
In support of the Clinic, the majority again makes arguments the Clinic itself does not make. The majority claims that the Clinic properly fired Wilson because Wilson knew of a procedure for transporting vaginal-rod patients, even if not the four-person lift procedure all the Clinic witnesses said Wilson should have followed. First, the fact remains that credible evidence suggests that the Clinic’s claimed procedure did not exist — the whole point of this pretext inquiry. Second, even if Wilson knew of a procedure, she did not know this patient had vaginal rods. If the Clinic truly had a procedure that Wilson should have followed, one might expect the Clinic to give Wilson the information needed to know to follow the procedure.
Fourth, the Clinic fired Wilson before it received relevant witness statements. The nurse and nursing assistant — the only other employees who witnessed the incident— did not provide written statements until after the Clinic had fired Wilson by phone. The majority attempts to use the honest belief rule to inoculate the Clinic, arguing that before the Clinic fired Wilson it relied on alleged interviews with the nurse and nursing assistant and an electronic incident report from the nursing assistant. But no one involved in the decision to fire Wilson has claimed that he or she relied on the alleged interviews or earlier electronic *408 report. And if the Clinic actually relied on the report, why did it ask the nursing assistant to write another report a week later?
Moreover, the honest belief rule’s protection “is not automatic.... [0]nce the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce proof to the contrary.” Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir.1998) (quotation marks omitted). Our court will not “blindly assume that an employer’s description of its reasons is honest.” Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir.2006) (quotation marks omitted). Here, Wilson has called into question the integrity of the termination process. A manager of Wilson’s department admitted that witness statements should be taken as close as possible to the time of an incident and that “discipline should take place after the investigation was complete.” Contrary to that manager’s characterization of the Clinic’s investigatory process, another manager fired Wilson before investigating all the facts, again raising the inference of retaliation.
Fifth, the Clinic never disciplined the nursing assistant who performed the move with Wilson, though the two employees were similarly situated. Wilson and the nursing assistant performed the same action at the same time, which posed the same safety risk, ignored the same alleged nurse’s instruction, and violated the same alleged department procedure. Yet the Clinic fired Wilson and did not so much as criticize the nursing assistant. As the majority points out, whether an employer treats similarly situated employees differently bears on the employer’s motivation and intent. Ladd v. Grand Trunk Western R.R., 552 F.3d 495, 503 (6th Cir.2009). Indeed, the nursing assistant was arguably more culpable than Wilson. The nursing assistant knew the patient had vaginal rods, was fragile, and should be lifted rather than slid, but she did not reveal any of this information to Wilson during the fifteen minutes the two waited for the nurse to arrive. Nor did she resist helping Wilson slide the patient, though she could have protested. The Clinic fired Wilson, but it did not discipline the nursing assistant at all, and this disparate treatment points again to pretext.
The court’s job at this juncture is not to pick a winner. We may not weigh the evidence or make credibility determinations, Anderson, 477 U.S. at 249, 106 S.Ct. 2505, and we must draw all inferences in the light most favorable to Wilson, see Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The majority makes the arguments defense counsel might make to a jury. But our sole task is to consider “whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry.” Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir.2000). There is. Certainly the evidence is hot “so one-sided that [the Clinic] must prevail as a matter of law.” Anderson, 477 U.S. at 243, 106 S.Ct. 2505. A jury could ultimately side with the Clinic, but that Wilson “may have a difficult time winning [her] case does not disable [her] from trying, at least so far as Rule 56 is concerned.” Jones v. Garcia, 345 Fed.Appx. 987, 990 (6th Cir.2009).
Simply put: Wilson provided enough evidence of pretext to create genuine disputes of material fact that must be resolved by a jury. I therefore respectfully dissent from Part 3.C. of the majority opinion; I would reverse the district court’s grant of summary judgment on Wilson’s retaliatory termination claim.