**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0539n.06

Case No. 15-2563

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Sep 16, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| THELONIOUS JACKSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DANIEL LUBELAN and PLATT R. | ) | MICHIGAN |
| WEINRICK, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: ROGERS, SUTTON, and COOK, Circuit Judges.

SUTTON, Circuit Judge. During an arrest in late 2011, Thelonious Jackson claims that he was injured by police when they placed him in tight handcuffs, pulled up on his handcuffs, and left him seated in an awkward position in the backseat of a police cruiser. As a result of the incident, Jackson claims that he suffers from a pinched nerve in his neck and pain in his hand. The district court concluded that qualified immunity precludes his claims. We agree because no case permits an excessive force claim for overly tight handcuffing in the absence of a physical injury caused by the handcuffing and because no case permits such a claim for the run-of-the-mine lifting of the handcuffs to help Jackson get into the police cruiser. We have one quibble with the district court about its treatment of the gross negligence claim and remand for further consideration of that claim.

I.

Save for a few minor, largely editorial differences, the parties agree on the basic series of events. On December 22, 2011, officers Lubelan and Weinrick stopped Jackson for driving with expired tags. During the stop, the officers discovered that Jackson had three outstanding warrants for driving without a license. They asked him to step out of the car and informed him that he was under arrest. One of the officers handcuffed Jackson, placing his arms behind his back.

Jackson soon began experiencing numbness and pain in his hands. He told the officers that the handcuffs were too tight and asked if they could "loosen them up." Neither officer responded to his complaint but instead led him toward the police cruiser. R. 43-2 at 11. Jackson again complained of pain, but one of the officers told him "not to worry" and that "he would take care of it." *Id.*

As Jackson moved into the police car, the officer "lift[ed him] up from the . . . wrist to put [him] in the car." *Id.* When the officer "lifted up" on his wrists to help Jackson, a broad shouldered man, maneuver into the backseat, "it kind of pinched [his] nerves in [his] neck." *Id.* At that point, Jackson's pain "got even worse" because his position in the car left him at a "different, funny angle." *Id.* In describing the events, Jackson attributes his injuries largely to this awkward entry and positioning in the car. "[T]he cuffs were too tight for one, and then when they pushed me up in the car it pinched something, so that's what caused the discomfort and the pain and I guess what caused everything else." *Id.* at 30. "I was just in a lot of pain by the cuffs, and, like I said, if they would have seated me . . . differently I think it might have alleviated the pain or maybe not even caused the pinching of the nerves up in my neck. It's the way that they place you in those cars initially that makes a big difference." *Id.*

All told, Jackson was handcuffed for roughly an hour. Throughout that time, he claims that he "continually" asked the officers to please "loosen the cuffs." *Id.* at 11. Neither officer loosened his handcuffs, he maintains.

While being processed, Jackson claims that he asked for a nurse to examine his wrist. Although this initial request was unfruitful, he later drafted a request for medical treatment and eventually saw a nurse at the jail. There is no recorded evidence of the written medical request or nurse's visit, and the jail's intake form indicates no "obvious pain or bleeding requiring immediate care" and lists only "arthritis" under "medical problems we should know about." R. 41-7 at 3.

After Jackson's release ten days later, he continued to experience pain in his hands and neck. About a month later, on January 26, 2012, Jackson sought medical attention for the pain. From that point on, he has undergone a series of treatments for persistent numbness and pain in his hands and pain in his neck and back. At least one doctor has diagnosed him with median wrist dysfunction and carpal tunnel. Another doctor has diagnosed him with cervical segmental dysfunction (dysfunction in the spinal joints in the neck), thoracic segmental dysfunction (dysfunction in the spinal joints in the mid-back), neuralgia (intermittent nerve pain), neuritis (peripheral nerve inflammation), and radiculitis (radiating nerve pain due to inflammation or irritation of the nerve root).

Jackson filed a § 1983 claim against the two arresting officers for excessive force in violation of the Fourth (and Fourteenth) Amendments and state law claims for assault and battery and gross negligence. The district court granted the officers' motion for summary judgment with respect to the excessive force and gross negligence claims, and it exercised its discretion to

dismiss his state-law assault claim without prejudice so that it could be refiled in state court. Jackson appealed.

II.

*Section 1983*. The relevant legal principles are not new. Summary judgment is appropriate if, after reading the evidence in favor of Jackson, we conclude that no reasonable jury could rule for Jackson. Fed. R. Civ. P. 56(c). An excessive force claim requires the claimant to show that the "particular use of force" was objectively unreasonable "in light of the facts and circumstances confronting" the officers on the scene. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The inquiry demands "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Because Jackson's claim arises from an encounter with government officials, here the police, he must overcome the hurdle of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). To make that leap, Jackson must demonstrate that "the officer[s'] conduct violated" the Fourth Amendment and that "clearly established" law showed as much. *Id.* at 201. We may review the two qualified-immunity questions in whichever order we wish. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

In this instance, we resolve the case on the clearly established ground. To meet this requirement, the contours of a right "must be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). While the specific series of events need not have been addressed in a prior case, the plaintiff must show that the unlawfulness of the conduct at issue was "apparent" in light of preexisting law. *Id.*

The problem for Jackson is that each of his theories of excessive force and injury has no on-point precedent. Start with the handcuffing claim. To establish an excessive force claim based on handcuffing, the claimant must show that "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)). While Jackson meets the first two requirements, he offers no evidence that the tightness of his handcuffs caused his injuries. Because Jackson does not allege that slightly looser handcuffs would have prevented his injuries, the traditional framework for injuries caused by overly tight handcuffs does not help him. There simply is no injury "resulting" from the handcuffing. *Id.* And Jackson points to nothing in the record (indeed we see nowhere for him to point) that demonstrates a causal connection between his injuries and handcuffing. In truth, the record and Jackson's testimony suggest that the injuries stem from the nerve damage in his neck, which Jackson admits was not caused by the tightness of his handcuffs. In Jackson's words, "if they would have seated [him] . . . differently . . . it might have alleviated the pain." R. 43-2 at 30.

The only injury that Jackson plausibly alleges as "resulting" from the handcuffing is the pain and numbness he felt after the first minute. But a subjective assessment of pain does not amount to evidence of "physical injury." *See Getz v. Swoap*, ___ F.3d ___, No. 15-3514, 2016 WL 4363152, at *5 (6th Cir. Aug. 16, 2016) ("[N]ot all conduct that causes an arrestee discomfort or pain violates the Fourth Amendment."); *see also Jones v. Garcia*, 345 F. App'x 987, 989 (6th Cir. 2009) ("[T]his is not a case where the suspect merely registered subjective complaints of pain."). That is not to say that a plaintiff's testimony can never establish an injury. It's to say that a subjective feeling of pain or numbness standing alone does not constitute a

physical injury. A ruling to the contrary would allow every suspect who is handcuffed to create a material-fact dispute over an excessive-force claim simply by stating that they complained and that the handcuffs hurt.

Now consider the claim that the excessive force occurred when the officers helped a standing Jackson move into the police car by pulling up on his handcuffed arms. There is no precedent for the idea that this maneuver counts as a malicious or gratuitous use of force. Keep in mind that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quotation omitted); *see also Saucier*, 533 U.S. at 209 (granting officer's qualified immunity defense where he allegedly shoved plaintiff into a police van).

Jackson offers no case that says that lifting an arrestee's handcuffed wrists to facilitate him moving into a police car violates the Fourth Amendment. The cited cases all involve far more extreme forms of force. In *Cochran v. Shelby Township*, for example, the plaintiff, a mentally and physically disabled women, alleged that she was "violently thrown to the floor" and, despite complaints of pain, lifted "off of the floor by the chain between" her handcuffs. No. 2:13-cv-11756, 2014 U.S. Dist. LEXIS 128965, at *7–9 (E.D. Mich. Sept. 16, 2014). Likewise, in *Williams-Turk v. Bazzy*, the plaintiff was "yanked" back into a standing position by her handcuffs as she began to fall off the steps of her front porch, resulting in "scream[s] [of] pain" that could be heard on the police's dash cam. No. 09-14786, 2011 U.S. Dist. LEXIS 77475, at *8–11 (E.D. Mich. July 18, 2011).

No doubt, there is "a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009). But these officers did no such

thing. They did not lift Jackson from the ground using only his handcuffs. *Cf. Cochran* 2014 U.S. Dist. LEXIS 128965, at \*6–7; *Trimble v. Parisek*, No. 11-12932, 2013 U.S. Dist. LEXIS 141077, at \*4 (E.D. Mich. Sept. 30, 2013). They merely "lifted up" on Jackson's handcuffs in order to assist him into the car. R. 43-2 at 11. No case establishes excessive-force liability on those facts.

So too for Jackson's claim that he was not positioned well in the back of the police cruiser. He offers no case where the suspect's positioning within the police car was even at issue. Nor are we aware of any authority clearly establishing the right to be free from awkward or uncomfortable placement in a police cruiser.

That leaves what seems to be the heart of Jackson's claim—that it was the combination of these events that amounted to excessive force and caused his injuries. The problem is that, while handcuffing someone so tightly that the handcuffs themselves cause injury is indeed a clearly established violation of the Fourth Amendment, *see Baynes*, 799 F.3d at 610–17, handcuffing someone just tightly enough that an awkward arm placement or a minor lift causes an injury is not. That is true even when the suspect complains to the officers. *See O'Malley v. City of Flint*, 652 F.3d 662, 672 (6th Cir. 2011).

Police also lacked notice that Jackson might require a special accommodation. Jackson did not warn police that he had a pre-existing injury or medical condition. *Cf. Crooks v. Hamilton Cty.*, 458 F. App'x 548, 549 (6th Cir. 2012) (sixty-five year old plaintiff told the officer that she had arthritis and "'really bad issues' with her neck, back, and shoulders"); *Solovy v. Morabito*, 375 F. App'x 521, 523 (6th Cir. 2010) (plaintiff told the officer that he had a "bad locked shoulder"). In reality, no evidence shows that Jackson had conditions to complain about.

*Baynes* and *Morrison v. Board of Trustees of Green Township*, 583 F.3d 394 (6th Cir. 2009), are not to the contrary. In *Baynes*, it is true, we relied on the plaintiff's testimony that he could not feel his fingers because of the tightness of the handcuffs, but we also relied on medical records indicating that he was treated for wrist injuries and diagnosed with "bilateral radial sensory neuropathy *from* handcuffs." 799 F.3d at 609 (emphasis added). In *Morrison*, the plaintiff alleged not only that the handcuffs caused her pain, but also that her skin was "all pinched over and . . . turning black and blue" and that the handcuffs "left 'marks' on her wrists." 583 F.3d at 398, 402–03. This testimony, unlike Jackson's, alleges an objective injury. The district court correctly rejected this claim as a matter of law.

*Gross Negligence.* Jackson also raised a state-law gross negligence claim predicated on the breach of the "duty to perform . . . employment activities so as not to endanger or cause harm" to others. R. 33 at 6. Jackson's theory is that, even if the officers did not intentionally batter him, they were grossly negligent in ignoring the risk of injury. Officers Lubelan and Weinrick argue that Jackson has misguidedly tried to state a claim under Michigan's immunity statute for negligence claims against public officials, Mich. Comp. Laws § 691.1407(2), which does not itself create a private cause of action.

But Jackson's pleadings show that he is bringing a common law negligence claim, not a claim under § 691.1407(2). *See Oliver v. Smith*, 715 N.W.2d 314, 317–18 (Mich. Ct. App. 2006). That Jackson's pleadings mention § 691.1407(2) does not show that he intended to use the immunity statute as the substantive basis for his claim. Section 691.1407(2) grants governmental officers immunity from tort liability unless their conduct "amount[s] to gross negligence that is the proximate cause of the injury." That is why Jackson alleged gross negligence, as required by the immunity statute.

We also disagree with the officers that Jackson has failed to assert any non-intentional torts. Breach of the duty described above is not inevitably intentional. And Michigan does allow gross negligence claims based on allegations that also form the basis of a claim for intentional use of excessive force. *See Oliver*, 715 N.W.2d at 316, 318. Hence, Jackson is not transforming intentional excessive force or battery claims into negligence claims. *Cf. Miller v. Sanilac Cty.*, 606 F.3d 240, 254 (6th Cir. 2010); *see also Vanvorous v. Burmesiter*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004). Rather, he is alleging that, even if intentional conduct did not cause his injuries, "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results" did. *Oliver*, 715 N.W.2d at 317 (quotation omitted).

All in all, Jackson's claims may well fail under Michigan's immunity statute for reasons similar to those that doom his § 1983 claim. However, because the district court did not analyze these issues in the first instance, we remand for further consideration consistent with the above conclusions. In light of this ruling and the district court's previous decision to decline jurisdiction over Jackson's other state law claim, the district court may reconsider the issue of supplemental jurisdiction in its discretion on remand.